UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN R. CARTMELL, an individual; and as attorney-in-fact and agent acting on behalf of the shareholder REPRESENTATIVE for the former eNIC Corporation shareholders,<br><br>    Plaintiffs,<br><br>    v.<br><br>VERISIGN, INC.,<br><br>    Defendant. | CASE NO. C02-2411C<br><br>ORDER |

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (Dkt. No. 46), Defendant's Motion for Partial Summary Judgment (Dkt. No. 56), and Defendant's Motion to Strike (Dkt. No. 85). The Court has carefully considered the papers filed by the parties and has determined that oral argument is not necessary. For the following reasons, the Court hereby GRANTS Plaintiffs' Motion for Partial Summary Judgment, STRIKES Defendant's Motion for Partial Summary Judgment, and STRIKES Defendant's Motion to Strike.

I. STATEMENT OF FACTS

On August 31, 2001, eNIC Corporation ("eNIC") and VeriSign, Inc. ("Defendant") entered into an Agreement and Plan of Merger ("Merger Agreement") in which Defendant agreed to acquire all shares

ORDER – 1

in eNIC. The Merger Agreement required Defendant to pay eNIC's shareholders ("Plaintiffs") a lump cash sum payment on August 31, 2001, and to pay "Additional Consideration" based on the occurrence of certain events in the subsequent two-year period.

Exhibit A to the Merger Agreement ("Exhibit A") details the two types of Additional Consideration: (1) "Performance-Based Earnout," and (2) "Regulatory Goals Earnout." Defendant was to pay the Performance-Based Earnout in four installments of up to $1,562,500. The amount of each quarterly payment was contingent on eNIC attaining certain revenue and registration targets. If eNIC did not meet a target, Defendant reduced its payment to Plaintiffs according to a formula provided in the Merger Agreement.

Defendant made the first three quarterly Performance-Based Earnout payments. For the fourth quarter ending August 31, 2002, Defendant calculated that Plaintiffs had earned $203,125.00 under the Performance-Based Earnout provisions.[1] Defendant alleged that Brian Cartmell breached the Merger Agreement and thus withheld payment.

Exhibit A states that Defendant shall pay the Performance-Based Earnout amounts as long as there have been no material violations of the listed covenants ("the Covenants").[2] (Merger Agreement Ex. A, § 5.) The Covenants include:

> (a)(i) <u>Regulatory Approvals</u>. [Defendant], Brian Cartmell and Bart Mackay will promptly execute and file, or join in the execution and filing of, any application, notification or other document that may be necessary in order to obtain the authorization, approval or consent of any Governmental Authority that may be reasonably required, which [Defendant] has reasonably requested, in connection

---

[1] In a letter to Brian Cartmell dated October 24, 2002, Defendant's Associate General Counsel, Paul Hudson, stated: "Per Exhibit A to the Merger Agreement, the shareholders are entitled to their pro rata share of 13% of the earnout amount = $203,125." (Cartmell Decl. Ex. 3.)

[2] The other conditions to payment of the Performance-Based Earnout amounts are: (1) an Industry Governing Body has not redelegated the .cc top-level domain ("TLD") to an entity other than Defendant or one of Defendant's affiliates; (2) Defendant's control over the .ccTLD has not been revoked, terminated, or materially impaired; and (3) the parties have not breached the non-competition agreements. (Merger Agreement Ex. A., § 5.)

ORDER – 2

    with achieving the Regulatory Goals in Section 6(a) of this <u>Exhibit A</u>.  [Defendant, Cartmell and Mackay] will use all commercially reasonable efforts to obtain, and to cooperate with each other to promptly obtain, all such authorizations, approvals and consents.

  (a)(ii) <u>Necessary Consents</u>. [Defendant, Cartmell, and Mackay] will use all commercially reasonable efforts to promptly obtain such written consents and authorizations of third parties, give notices to third parties and take such other actions as may be reasonably necessary in order to effect the Regulatory Goals specified in Section 6(a) of this <u>Exhibit A</u>.

  (a)(iii) <u>Top-level Domain Contact</u>. [Cartmell and Mackay] shall take all reasonable and necessary action to change the administrative contact for the .ccTLD to an employee of [Defendant] or its Subsidiaries, as specified by [Defendant], provided that such action shall not cause IANA/ICANN to initiate proceedings to redelegate the .ccTLD name.

    \*  \*  \*

(Merger Agreement Ex. A., § 4(a).)

  The Merger Agreement also provides a procedure by which Defendant is to notify Cartmell and Mackay of any breach of the Covenants.  First, the Covenants state that, upon becoming aware of a breach of any of the Covenants, Defendant "will provide written notice to [Cartmell and Mackay] . . . [Cartmell and/or Mackay], shall then have thirty (30) days to cure such breach."  (*Id.* § 4(c).)  The Merger Agreement further provides that: "All notices and other communications required or permitted under [the] Agreement will be in writing and will be either hand delivered in person, sent by facsimile, sent by certified or registered first class mail, postage pre-paid, or sent by nationally recognized express courier service."  (Merger Agreement § 13.9.)  The agreement then designates the individuals and addresses to which such notices are to be sent.  (*Id.*)

  The Regulatory Goals that Plaintiffs must meet to obtain the Regulatory Goals Earnout, and that are referenced in Exhibit A §§ 4(a)(i) and (ii), include: "[Defendant] has obtained the written consent and other relevant assurances from IANA/ICANN delegation, each in form and substance satisfactory to [Defendant], to [Defendant's] or its Subsidiaries' . . . administration of the [.ccTLD]."  (Merger Agreement Ex. A., § 6(a)(i).)  The other goals include Defendant's receipt of (1) assurances that ICANN has changed its records to reflect Defendant as the sponsoring organization for the .ccTLD name; (2) a

ORDER – 3

release of Island Internet Services as the sponsoring organization for the .ccTLD; and (3) assurances from the governments involved that they support Defendant's administration of the .ccTLD and the parties' merger. (*Id.* § 6.)

Between April 12, 2002 and June 10, 2002, Cartmell and his supervisor, Adam Zimmerman, exchanged a series of email messages and letters regarding the parties' progress toward meeting the Regulatory Goals. On June 7, 2002, Zimmerman sent Cartmell an email ("June 7 Message"). In this message, Zimmerman suggests that Cartmell work cooperatively with people at VeriSign to develop a strategy for meeting the Regulatory Goals. He then states:

> Equally puzzling is your continued assertion that the regulatory goal defined in section 6(a)(i) of the earnout agreement has been satisfied. Nothing has changed since my email to you of May 3, 2002, in which I indicated that this goal has not been achieved. We have not received appropriate written consent and other relevant assurances from ICANN of VeriSign's administration of the [.ccTLD]. Indeed, one of the primary reasons for the May 14 conference call was to discuss a plan for obtaining such consent . . .
>
> Please use the approach outlined above to facilitate support for each of your requests and proposals . . .

(Zimmerman Decl. Ex. D.)

Cartmell responded by email on June 10, 2002. In this message, he states: "You and I are of like mind in that we want to proceed expeditiously and efficiently to meet the regulatory goals in the agreement. My letter was an effort to make specific suggestions towards that end and to flesh out those goals that Verisign may no longer have an interest in meeting." Cartmell then disputes Zimmerman's interpretation of § 6(a)(i) and requests that Defendant put forward specific proposals for meeting the Regulatory Goals. (Zimmerman Decl. Ex. G.)

II. PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs move the Court for an order granting summary judgment on their First Cause of Action, Defendant's breach of contract regarding the Performance-Based Earnout for the fourth quarter. They also request that the Court enter a judgment of $203,125 plus accrued interest, attorney's fees, and costs.

//

ORDER – 4

*A. Summary Judgment Standard*

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003). In determining whether a genuine issue of material fact exists, the court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Initially, the moving party has the burden to establish that there is no genuine issue of material fact. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978). Once the movant has met this burden, the non-moving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250.

*B. Plaintiffs' Alleged Material Violation of the Covenants*

Under the terms of Exhibit A, Defendant is to pay Plaintiffs $203,125.00 unless Plaintiffs materially violated one of the Covenants.[3] To assert a material violation as an affirmative defense to payment of the Performance-Based Earnout, Defendant must have provided Cartmell and Mackay with written notice once it became aware of the breach and have given them thirty days in which to cure the breach.

The Court does not reach the question of whether Plaintiffs breached the Covenants because it finds that Defendant did not fulfill its obligation to provide Plaintiffs with notice of the alleged breach and an opportunity to cure it. Defendant argues that the June 7 Message constitutes the requisite notice. Rather than state that Cartmell has breached one of the Covenants, however, the message simply provides a process by which the parties are to work to complete the Regulatory Goals. While the message indicates that Zimmerman and Cartmell do not agree on what the Covenants and Regulatory Goals require, it does not state that Cartmell has failed to fulfill his obligations.

---

[3] The parties do not dispute that Plaintiffs fulfilled the other conditions to payment of the Performance-Based Earnout.

ORDER – 5

1    Even if the June 7 Message had contained an accusation of breach and provided an opportunity
2    for Cartmell to cure, it would still fail to serve as proper notice. Notice provisions in agreements are
3    enforceable according to their terms. *See Harper v. Del. Valley Broadcasters*, 743 F. Supp. 1076, 1083-
4    84 (D. Del. 1990), aff'd, 932 F.2d 959 (3d Cir. 1991).[4] The Merger Agreement requires that all notices
5    must be delivered by one of several enumerated means and served on a set of listed individuals. (Merger
6    Agreement § 13.9.) Zimmerman sent the June 7 Message by email rather than by one of the listed
7    methods and delivered it only to Cartmell. Thus, pursuant to the terms of the Merger Agreement, this
8    message was insufficient to provide Cartmell with the required notice of breach.

*C. Repudiation of the Covenants*

Defendant argues that even if it did not provide the required notice, Cartmell repudiated the Merger Agreement, and therefore Plaintiffs are precluded from recovering the Performance-Based Earnout. Repudiation is an "outright refusal" by a party to perform a contract or its conditions that entitles the other party to treat the contract as rescinded. One party's statement that it will not perform unless terms different from those in the original contract are met also constitutes a repudiation. *See CitiSteel USA, Inc. v. Connell Ltd. Partnership*, 758 A.2d 928, 931 (Del. Supr. 2000).

Defendant has not produced evidence that Cartmell refused, outright, to complete his obligations under the Merger Agreement. The correspondence that Defendant submits shows that the parties disagreed about what certain terms of Exhibit A required, and how best to fulfill those requirements; it does not indicate that Cartmell refused to work toward meeting his commitments. Further, Defendant has not shown that Cartmell stated he would not perform unless Defendant met terms independent of those in the Merger Agreement. Even assuming he advocated for terms different than those to which he had originally agreed, Cartmell did not state that he would not act unless Defendant recognized those alternate terms. Thus, Defendant has not met its burden to show there is a genuine issue of material fact

---

[4] Pursuant to the terms of the Merger Agreement, Delaware law governs this dispute.

ORDER – 6

as to whether Cartmell repudiated the Merger Agreement.

Defendant did not provide Cartmell with the required notice of breach and therefore cannot invoke Cartmell's alleged breach of the Covenants as an affirmative defense to its obligation to pay the Performance-Based Earnout amount due for the fourth quarter. Additionally, Defendant has not shown that Cartmell repudiated the Merger Agreement, thereby voiding its obligation to pay this amount. Accordingly, the Court hereby GRANTS Plaintiffs' Motion for Partial Summary Judgment and directs the Clerk to enter judgment for $203,125.

*D. Plaintiffs' Request for Attorney's Fees and Interest*

Plaintiffs request that the Court grant reasonable attorney's fees and costs associated with filing this motion. Section 13.8 of the Merger Agreement provides:

> <u>Attorneys' Fees</u>. Should suit be brought to enforce or interpret any part of this Agreement, the prevailing party will be entitled to recover, as an element of the costs of suit and not as damages, reasonable attorneys' fees to be fixed by the court (including costs, expenses and fees on any appeal). The prevailing party will be entitled to recover its costs of suit, regardless of whether such suit proceeds to final judgment.

(Merger Agreement § 13.8.) The Court considers the "suit" referred to in § 13.8 to be the action as a whole, rather than individual motions filed during the course of the action. The current Motion for Partial Summary Judgment is one piece of Plaintiffs' underlying action. Thus, the Court finds that an award of attorney's fees is premature and therefore hereby DENIES Plaintiffs' request.

Plaintiffs also seek an award of interest accrued on the fourth quarter Performance-Based Earnout amount. The Court declines to address Plaintiffs' request at this time. Parties are directed to file papers with the Court regarding an interest payment within thirty (30) days of this order.

III. DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant moves the Court for an order finding that the term "IANA/ICANN delegation" in § 6(a)(i) of Exhibit A means ICANN and not eNIC or any of its related entities. Such a finding is not warranted at this time. Although the parties dispute the meaning of "IANA/ICANN delegation," and the term may be central to a determination of whether Plaintiffs breached elements of the Merger Agreement,

ORDER – 7

Defendant has not shown that it is a proper subject for summary judgment.[5] At this time, it is unclear how a finding that the term either does or does not mean ICANN rather than eNIC and its subsidiaries will affect the pending causes of action. Therefore, the Court STRIKES Defendant's motion. Defendant may refile the motion in conjunction with a motion for summary judgment on a cause of action at a later date.

IV. DEFENDANT'S MOTION TO STRIKE

Defendant's Motion to Strike seeks to strike portions of declarations Plaintiffs filed in support of their Response to Defendant's Motion for Partial Summary Judgment. Not only is Defendant's motion improperly filed pursuant to CR 7(g),[6] but also the Court has stricken the related summary judgment motion. Accordingly, the Court hereby STRIKES Defendant's Motion to Strike.

SO ORDERED this __21st__ day of June, 2005.

_/s/ John C. Coughenour_
UNITED STATES DISTRICT JUDGE

---

[5] Defendant argues that this term is central to whether payment is due under the Performance-Based Earnout clause. The Court, however, has found that regardless of whether Plaintiffs violated the Regulatory Goals and/or the Covenants, Defendant did not provide the notice of breach required under the Merger Agreement, and Plaintiffs did not repudiate the agreement. Thus, it is unnecessary for the Court to determine the meaning of the term "IANA/ICANN delegation" at this time.

[6] CR 7(g) provides, in part: "Requests to strike material contained in or attached to submissions of opposing parties shall not be presented in a separate motion to strike, but shall instead be included in the responsive brief, and will considered with the underlying motion."

ORDER – 8