UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN R. CARTMELL, as an individual; and in his capacity as attorney-in-fact and agent acting on behalf of the shareholder representative for the former eNIC Corporation shareholders,<br><br>                Plaintiffs,<br><br>   v.<br><br>VERISIGN, INC.,<br><br>                Defendant. | CASE NO. C02-2411C<br><br>ORDER |

This matter comes before the Court on Plaintiffs' motion to dismiss Defendant's counterclaims, or in the alternative, for summary judgment against Defendant's counterclaims (Dkt. No. 116). The Court has carefully considered the memoranda, declarations, and exhibits submitted by the parties and has determined that oral argument is unnecessary. For the following reasons, the Court will GRANT Plaintiffs' motion IN PART, and will enter summary judgment for Plaintiffs on the first and third of Defendant's three counterclaims.

**I.    BACKGROUND**

The Court has set forth the relevant background allegations in this dispute in previous orders. (*See, e.g.*, Dkt. Nos. 13 & 94.) For purposes of adjudicating Plaintiffs' present motion, the Court incorporates by reference the factual summary in its June 21, 2005 Order describing the merger transaction and agreement, as well as the parties' actions in the wake of the merger, underlying and

ORDER – 1

framing this dispute. (*See* Dkt. No. 94, at 1–4.) In particular, the Court refers to the Order's description of Exhibit A to the Agreement, which set forth in section 4(a) Cartmell's duties to assist VeriSign's efforts to achieve certain regulatory and administrative consents related to the ".cc" top-level domain. (*Id.*) As was the focus of that Order, section 4(a) also required VeriSign to provide Cartmell with written notice and a 30-day cure opportunity if it believed he had breached any of his obligations in Exhibit A. (*Id.* 3.) This order will supplement these baseline facts below, as relevant to each particular issue presently before the Court.

## II. LEGAL ANALYSIS

### A. Defining the Parties to This Litigation

As a threshold matter, the Court must first address whether Brian Cartmell remains a party to this case in his individual capacity. Cartmell argues that Defendant's counterclaims must be dismissed because they are directed to his actions as an individual employee of eNIC. (Mot. 11.) He reasons that an amended complaint effectively "dismissed" him as an individual, and thus, Defendant was required to implead him as a third party if it wished to maintain its counterclaims against him. (*See id.*)

In the original complaint, the plaintiffs identified themselves as (1) Cartmell as an individual, and (2) Cartmell as "attorney-in-fact and agent acting on behalf of the shareholder representative for the former eNIC Corporation." (Dkt. No. 1.) Nearly three years later, the parties filed a stipulated order granting leave to file an amended complaint, reciting that Cartmell's individual claims in the original complaint were moot and should be dismissed. (Dkt. No. 105.) The Court's order provided that the "former shareholders of eNIC Corporation, by and through their shareholder Representative, may file a First Amended Complaint," and that Cartmell's individual claims were dismissed without prejudice. (*Id.* 2.) However, the order made no mention of dismissing Cartmell as a party; nor did it address Defendant's pending counterclaims against Cartmell individually.

Nonetheless, the amended complaint was recaptioned with a single plaintiff: Cartmell only in his "attorney-in-fact" capacity. (Dkt. No. 106.) Defendant's answer to the amended complaint continued to

ORDER – 2

list Cartmell as a plaintiff in his individual capacity, and maintained and expanded the counterclaims against Cartmell individually. (Dkt. No. 107, at 1, 13–15.) Since then, Cartmell continues to caption himself as plaintiff solely in his representative capacity, while Defendant captions Cartmell in both his individual and representative capacities.

On this record, the Court finds that there are *two* plaintiffs in this case: (1) Brian R. Cartmell individually, as the former Director of General Management for eNIC and party to the Agreement; and (2) the "attorney-in-fact and agent acting on behalf of the shareholder representative for the former eNIC Corporation."[1] Defendant asserted counterclaims against Cartmell in his individual capacity in its answer to the original complaint, in reliance on his status as a named plaintiff in that capacity. And the stipulation for leave to file an amended complaint did not constitute a dismissal of Cartmell as a party. That order dismissed Cartmell's individual claims against Defendant, but did not unilaterally dismiss him from the case. (Dkt. No. 105.)

Although Cartmell as an individual disappeared from the caption in the amended complaint, this did not alter the fundamental dispute between the parties: whether Cartmell (as the eNIC Director) on the one hand, and VeriSign on the other, performed their obligations under Exhibit A to the Agreement. Indeed, Exhibit A expressly assigns to Cartmell himself—not the shareholder "Representative"—rights and duties relating to Additional Consideration. (*See, e.g.*, Agreement Ex. A, ¶¶ 4(a)(I), 6(a)(v).)

Accordingly, the Court rejects Plaintiffs' argument that Defendant's counterclaims against Cartmell individually are misjoined. To ensure that the parties' and clerk's records are accurate in all respects, the Court ORDERS that all filings in this case henceforth shall bear a caption identical in every material respect to that of this Order.

---

[1] This is not a finding regarding the existence and extent of Cartmell's authority to act on behalf of the Representative or the Shareholders, or whether any claim or defense related to those issues remains viable.

ORDER – 3

### B.     Standards for Motions to Dismiss versus Motions for Summary Judgment

Plaintiffs style their motion as requesting relief under either Rule 12(b)(6) or Rule 56(c). Rule 12(c) requires that when the parties present and rely on matters beyond the pleadings, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56," provided all parties are on notice that the court may proceed under the summary judgment standard. FED. R. CIV. P. 12(c). Both parties submitted and relied on declarations and exhibits beyond the pleadings, and Plaintiffs' motion itself provided ample notice that the Court could exercise its discretion to evaluate Plaintiffs' motion under Rule 56(c). When a party "invites consideration of [materials outside the pleadings] has notice that the judge may use them to decide a motion originally noted as a motion to dismiss, requiring its transformation to a motion for summary judgment." *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004).

Accordingly, the Court will apply the summary judgment standard articulated in its June 21 order: A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Initially, the moving party has the burden to establish that there is no genuine issue of material fact. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir. 1978). Once the movant has met this burden, the non-moving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250.

### C.     Application of Summary Judgment Standards to Defendant's Counterclaims

In its answer to Plaintiffs' first amended complaint, Defendant asserted three counterclaims against Cartmell in his individual capacity. This Order will address Plaintiffs' summary judgment motion as to each of these three counterclaims in turn.

ORDER – 4

### 1.     *Breach of contract*

Defendant's first counterclaim asserted that Cartmell breached his obligations under the Agreement to obtain certain regulatory approvals and consents. (Dkt. No. 107, at 13.) As explained in the Court's June 21 Order, Defendant failed to provide adequate notice and opportunity to cure any such breaches. (Order 5–6.) Defendant admits, therefore, that "the June Order is the law of the case and would preclude VeriSign from succeeding on its first counterclaim." (Opp'n 3 n. 1.) Accordingly, the Court GRANTS Plaintiffs' motion for summary judgment on Defendant's counterclaim for breach of contract, and ORDERS that counterclaim DISMISSED with prejudice.

### 2.     *Breach of duty of good faith and fair dealing*

Defendant's second counterclaim alleges that Cartmell's actions following the merger breached his duty of good faith and fair dealing implied in the Agreement. (Dkt. No. 107, at 13–14.) Distinct from the express terms in Exhibit A, Defendant alleges that Cartmell was also under the duty "to cooperate with VeriSign and not take any action to deprive VeriSign of any benefit of its bargain." (*Id.* 14.) Specifically, Defendant alleges that Cartmell (1) failed "to make all commercially reasonable efforts to obtain [required] regulatory approvals"; (2) "failed to cooperate in promptly obtaining all such authorizations, approvals, and consents"; and (3) "resigning his position and threatening conduct that would cause" VeriSign to possibly lose control of the .cc TLD. (*Id.*) Plaintiffs' argue that this counterclaim must fail as either (1) a restatement of the dismissed breach of contract counterclaim, or (2) an improper attempt to expand Cartmell's duties beyond those expressed in the Agreement. (Mot. 6–7.)

Delaware law recognizes that a duty of good faith and fair dealing is implied in every written agreement: "Modern contract law has generally recognized an implied covenant to the effect that each party to a contract will act with good faith towards the other with respect to the subject matter of the contract." *Katz v. Oak Indus. Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986). Plaintiffs are correct, as a general matter, that the "rights and obligations of the various parties are or should be spelled out" in the

ORDER – 5

contract, and that amorphous phrases such as "good faith and fair dealing" cannot expand or alter the contract's written terms. *Id.* at 879. However, "'at some point it becomes necessary for courts to look at the substance rather than to the form of the agreement,' and to recognize that "parties occasionally have understandings or expectations that were so fundamental that they did not need to negotiate about those expectations.'" *Id.* at 880 (citing CORBIN ON CONTRACTS, § 570).

The question for the Court, therefore, is whether Defendant has adequately alleged that Cartmell engaged in "arbitrary or unreasonable conduct which [had] the effect of preventing [Defendant] from receiving the fruits of" the Agreement. *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985) (citing RESTATEMENT (SECOND) OF CONTRACTS § 205), *superseded by statute on other grounds.* Viewing the present record in the light most favorable to Defendant, the Court finds that there are genuine issues of material fact surrounding Cartmell's post-merger conduct. In their papers, both parties rely on characterizations of whether Cartmell's actions hindered Defendant's acquisition of the regulatory consents and approvals required by Exhibit A to the Agreement. Defendant marshals declarations and documentary evidence to show that Cartmell acted in bad faith by, among other actions, (1) neglecting to dedicate his best efforts toward achieving Australia's support of VeriSign's administration of the .cc TLD;(2) advocating an untenable interpretation of the Agreement as not requiring IANA/ICANN's written consent; and (3) generally delaying and prevaricating in a manner that diminished VeriSign's ability to achieve these regulatory goals. (Opp'n 5–9; Exs. 9–22.) Plaintiffs respond that Defendant has "distorted" and mischaracterized Cartmell's actions, which in fact, were nothing more than good faith disagreements over the terms of the Agreement. (Reply 1–2.)

The Court is not inclined to engage in a fact-finding mission regarding whether Cartmell's acts or omissions constituted good faith under the Agreement. The Court need not rewrite the terms of the Agreement to find that there are disputed issues of material fact on this counterclaim; rather, this Order concludes only that it would be premature to find as a matter of law that Defendant could not succeed at

ORDER – 6

trial on its claim for breach of the duty of good faith and fair dealing. Accordingly, the Court DENIES Plaintiffs' motion for summary judgment as to Defendant's second counterclaim.

### 3. Breach of duty of loyalty

Defendant's third counterclaim alleges that Cartmell breached his duty of loyalty by "pursuing courses of action that favored his own interests over those of VeriSign." (Dkt. No. 107, at 14.) Plaintiffs' argue that this counterclaim must fail because (1) it is a restatement of the dismissed breach of contract counterclaim, and (2) it fails to allege any acts by Cartmell, and instead relies only on his alleged omissions. (Mot. 6–7.)

Under Washington law,[2] the duty of loyalty encompasses the employee's duty not to compete with the employer or otherwise to misappropriate or misuse the employer's resources for his own personal gain. *See Parson's Supply, Inc. v. Smith*, 591 P.2d 821, 823–24 (Wash. Ct. App. 1979). "A willful violation of the duty of loyalty may constitute a material breach of the contract, even though the harm likely to arise from such breach is very small." *Williams v. Queen Fisheries, Inc.*, 469 P.2d 583, 586 (Wash. Ct. App. 1970) (citing RESTATEMENT (SECOND) OF AGENCY § 409). While not strictly limited to the covenant not to compete directly with an employer, the doctrine under Washington law does require an allegation that the employee created a conflict of interest: "Reasons behind the establishment of the duty of loyalty rule by equity are that it is generally, if not always, humanly impossible for the same person to act fairly in two capacities and on behalf of two interests in the same transaction." *Id.* (internal quotations omitted).

Defendant asserts that Cartmell breached his duty of loyalty to VeriSign by refusing to "act to achieve the regulatory goals [in Exhibit A to the Agreement], threaten[ing] to take multiple actions that would harm VeriSign's interests by causing IANA/ICANN to initiate redelegation proceedings for the .cc [TLD], and refus[ing] to initiate VeriSign-mandated reforms of eNIC's internal operation s until VeriSign

---

[2] The parties agree that Washington law applies to what is, at least with regard to this duty of loyalty counterclaim, an employment dispute between VeriSign and Cartmell.

ORDER – 7

addressed the 'settlement proposals' that accompanied his threats." (Dkt. No. 107, at 15.) Defendant argues that these threats and omissions evidence Cartmell's choice to "seek his own private gain over VeriSign's interests . . . until VeriSign acquiesced to his demands to be paid for achieving goals he never accomplished." (Opp'n 16.)

Even as augmented by the substantial volume of declaratory and documentary evidence submitted by Defendant, these allegations properly run to its counterclaim for Cartmell's breach of his duty of good faith and fair dealing. While not strictly a restatement of its now-dismissed contract claims, Defendant's second and third counterclaims identify and rely on the same acts and omissions by Cartmell relating to the regulatory goals in Exhibit A to the Agreement. (Compare Dkt. No. 107, ¶ 24, with id. ¶ 28.) To frame its duty of loyalty claim, Defendant simply ascribes an additional motivation to these same acts and omissions—that is, that Cartmell "chose to seek his own private gain" rather than pursue the regulatory goals in good faith. (Opp'n 16.) Defendant also attempts to frame a conflict of interest by alleging that Cartmell was conflicted by (1) his duty to pursue in good faith the regulatory goals in the Agreement, and (2) an allegedly competing interest in acquiring for himself and the former eNIC shareholders the maximum amount of performance-based and regulatory earn-outs under the same Agreement. (*See* Opp'n 16.)

But even taking Defendant's allegations as true, these allegations do not implicate an employee's duty of loyalty. Cartmell's attempt to squeeze the maximum earn-out payments from VeriSign despite his minimum effort may have evidenced bad faith, but did not place him in the "corrupting" position of sacrificing his employer's interests in favor of his own. *Williams*, 469 P.2d at 586. Put differently, Cartmell's rights to earn-out payments were driven by the same terms as his obligations to pursue the underlying regulatory goals; these are not circumstances of materially adverse interests, even if Cartmell's actions demonstrated bad faith or unfair dealing. The duty of loyalty under Washington law is not intended to remedy an employee's bad faith refusal to adhere to the letter or spirit of a contract. *See id.* ("The standard of duty required is for the agent to avoid placing himself in a situation where he may be

ORDER – 8

tempted by his own private interests . . . ."). Defendant may instead seek to recover for Cartmell's actions under its counterclaim for breach of duty of good faith and fair dealing.

Accordingly, the Court GRANTS Plaintiffs' motion for summary judgment on Defendant's counterclaim for breach of the duty of loyalty,[3] and ORDERS that counterclaim DISMISSED with prejudice.

### III. CONCLUSION

In sum, the Court GRANTS Plaintiffs' motion for summary judgment as to Defendant's counterclaims for breach of contract and breach of duty of loyalty, and ORDERS those counterclaims DISMISSED with prejudice. The Court DENIES Plaintiffs' motion as to Defendant's counterclaim for breach of duty of good faith and fair dealing.

SO ORDERED this 7th day of December, 2005.

*/s/ John C. Coughenour*

UNITED STATES DISTRICT JUDGE

---

[3] Given this conclusion, the Court need not reach the parties' respective arguments regarding the sufficiency of Defendant's damages allegations in the third counterclaim.

ORDER – 9